Warren E. **MAGNUSON**, Appellant,

v.

**STATE of Alaska, Appellee.**

No. A–4369.

Court of Appeals of Alaska.

Dec. 31, 1992.

---

R. Scott Taylor, Rice, Volland and Gleason, P.C., Anchorage, for appellant.

Kimberly A. Staten–Hayes, Asst. Dist. Atty., Edward E. McNally, Dist. Atty., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

COATS, Judge.

Warren E. Magnuson was convicted, based upon his plea of no contest, of obstructing an airport and runway in violation of AS 02.20.050. In entering his plea, Magnuson reserved his right to appeal Judge Crutchfield's denial of his motion to dismiss. *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974). Magnuson now appeals his conviction to this court. We reverse.

The facts of this case appear to be undisputed. Warren Magnuson owns a mining claim on Gaines Creek which is approximately twenty-five miles west of McGrath, Alaska. Magnuson lives at the claim from May to October and operates his gold mine. Magnuson has constructed an air strip which he uses to fly in to his mining claim. During the winter months, Magnuson closes his air strip. During the winter of 1990, Magnuson closed his air strip by placing numerous fifty-five-gallon steel drums and heavy motorized vehicles on the runway. In October 1990, an Alaska State Trooper noticed that the landing field was obstructed. As a result of the trooper's investigation, the state charged Magnuson with a violation of AS 02.20.050 which provides as follows:

**Obstructing airports and runways.** (a) A person may not place an object on the surface of a public or private airport that because of its nature or location might cause injury or damage to an aircraft or person riding in the aircraft.

(b) A person may not dig a hole, or make any kind of excavation, or drive a sled, tractor truck or any kind of vehicle upon the surface of an airport that might make ruts, or tracks, or add to an accumulation of tracks so as to cause sufficient roughness of the surface to endanger aircraft using the airport.

(c) All acts prohibited in (a) and (b) of this section also apply in their entirety to any temporary airport or runway that has been marked out on the frozen surface of a stream or lake for the use of aircraft.

AS 02.15.260 defines "airport" as follows:

**Definitions.** In this chapter ... (5) "airport" means an area of land or water which is used or intended for use for the landing and take-off of aircraft, and any appurtenant areas which are used or in-

tended for use for airport buildings or other airport facilities or rights-of-way, together with airport buildings and facilities located thereon; ...

Magnuson moved to dismiss the charge against him. He contended that AS 02.20.-050 was designed to stop a person from placing objects on a runway which, because of their inconspicuous nature, "might cause injury or damage to an aircraft or person riding in the aircraft." He contended that it was necessary for him to close the runway for the winter to prevent thieves or vandals from landing on the runway and taking or destroying valuable property which he had at the mining claim. He claimed that if the court interpreted AS 02.20.050 to apply to his conduct, AS 02.20.-050 would be unconstitutionally vague and would otherwise interfere with several of his constitutional rights.

The state contended that the statutory meaning was clear: a person could not obstruct either a public or private airport. The state pointed out that in an emergency a pilot might need to land on Magnuson's runway. The state pointed out that no matter how obvious an obstruction might be in good weather, in a snow storm or other emergency a pilot might not see the obstruction and the obstruction "might cause injury or damage to an aircraft or person riding in the aircraft." The state argued that it was important to preserve emergency landing areas in a sparsely populated state.

Judge Crutchfield denied Magnuson's motion to dismiss. Judge Crutchfield concluded "that Mr. Magnuson acted in one of the few ways that he could incur liability—placing obstructions on an airstrip that someone may have anticipated utilizing as a last resort short of crash landing on the tundra."

We have very little information to rely on in interpreting the statute other than the words of the statute itself. The parties and Judge Crutchfield appear to have found the only case in this state which discusses the statute, *McLemore v. Harris*, 374 P.2d 410 (Alaska 1962), a civil case. In that case, the supreme court stated:

> The term "bush airfield" or "bush airstrip" connotes in Alaska an unregulated field for light aircraft. These fields played an important part in the settlement and development of the Territory of Alaska and continue to do so under statehood.... Sometimes they are located on private property and at other times on the public domain.

*Id.* at 410–11. The facts and discussion in *McLemore*, however, are not particularly helpful for resolving the issues in this case. In *McLemore*, the supreme court held that the trial court could find that a defendant in a civil case had acted in violation of the statute when he parked his truck on a bush airfield. The court upheld a verdict for the plaintiff which was based on an accident which occurred when the plaintiff landed his airplane on the airfield and struck defendant's truck. However, in *McLemore*, the parties did not dispute the fact that the airstrip in question was an operating airstrip and that the defendant knew this.

We have consistently held that "ambiguities in criminal statutes must be narrowly read and construed against the government." *State v. Andrews*, 707 P.2d 900, 907 (Alaska App.1985); *Wylie v. State*, 797 P.2d 651, 657 (Alaska App.1990). Although the state's interpretation of AS 02.20.050 is plausible, and may constitute good policy, we do not believe that the statute is sufficiently clear to allow the state to criminally punish Magnuson's conduct. Alaska Statute 02.15.260 defines "airport" as "an area of land or water which is used or intended for use for the landing and take-off of aircraft....." The state concedes that Magnuson does not have to maintain his property as an airport. The state concedes that he could build a house on the strip, plant trees, or make some other use of the property which would make the area in question no longer an airport. However, the statute does not instruct a landowner

how and under what circumstances an airstrip may be closed so that it is no longer "used or intended for use for the landing and take-off of aircraft." Arguably, the person who determines whether the area is "used or intended for use for the landing and take-off of aircraft" is the landowner. Mr. Magnuson has decided that during the winter months, the area in question is not to serve as an airstrip. During this time it is no longer to be "used or intended for use for the landing and take-off of aircraft." Arguably, he can do this. The statute, as it currently stands, is not sufficiently clear so that we can say that Magnuson's conduct was criminal under AS 02.20.050.

The state contends that a landowner can close a private airport by placing an "X" on the runway. This argument is seemingly inconsistent with the state's concession that a landowner may not close the runway by putting barrels or machinery or other obstructions on the runway. However, the state agrees that a landowner could build a house, plant trees, or run a business on the runway. A landowner who took these actions would certainly be placing obstructions on the airstrip. The statute does not clearly specify when or how the landowner could obstruct the airstrip legally as a means of closing it. Again, we do not believe that the statute is sufficiently clear so as to criminalize Magnuson's conduct. Here Magnuson's intent was clearly not to prevent certain traffic from using an otherwise operational airstrip or to restrict the use of an operational airstrip for limited periods of time. Instead, it is undisputed that Magnuson's intent was to close the airstrip entirely for a period of approximately six months. During this time the land was clearly not to be "used or intended for use for the landing and take-off of aircraft." We accordingly hold that the statute, as it currently stands, does not reach Magnuson's conduct. We conclude that Judge Crutchfield erred in failing to grant Magnuson's motion to dismiss.

In so holding, we recognize the force of the state's argument that it may be important to maintain small private airfields throughout the state which are free of obstructions in case of emergency. We recognize that the state may have a strong interest in requiring a landowner to notify the public of actions which he takes with land that has been used as an airstrip. However, the state, by statute or regulation, must give a landowner clear notice as to what conduct is legal and illegal. By our decision we do not intend to preclude the state from charging a person who obstructs an airport or runway under AS 02.20.050 if that person engages in "hardcore conduct" under the statute. *See Stock v. State*, 526 P.2d 3 (Alaska 1974). The state is free to amend the statute or enact regulations which would give a person in Magnuson's position notice as to what conduct he may or may not engage in under AS 02.20.050. We also do not intend to preclude the state from prosecuting hazardous conduct under other statutes.[1]

The conviction is REVERSED.

---

**1.** For instance, under some circumstances the state may be able to charge a defendant with reckless endangerment under AS 11.41.250. Under that statute, "a person commits the crime of reckless endangerment if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."