**Michael T. WHITING, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10035.**

Court of Appeals of Alaska.

Sept. 12, 2008.

---

**8.** 362 P.2d 893 (Alaska 1961).

**9.** *Id.* at 897.

**10.** 693 P.2d 324 (Alaska App.1984).

**11.** *Id.* at 329.

Barrett Schultz, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Suzanne C. Powell, Assistant District Attorney, and Roman J. Kalytiak, District Attorney, Palmer, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: Coats, Chief Judge, and Mannheimer and Stewart, Judges.

## OPINION

MANNHEIMER, Judge.

Michael T. Whiting pleaded no contest to the crime of attempted third-degree controlled substance misconduct (attempting to possess cocaine with intent to distribute it) [1] and one count of fourth-degree controlled substance misconduct (possession of oxycodone).[2] For these two offenses, Whiting received concurrent sentences of 5 years with 1 year suspended and 5 years with 4 years suspended, respectively. He now appeals his sentence on four grounds.

First, Whiting argues that the superior court applied the wrong standard of proof when the court decided whether Whiting had proved proposed mitigating factors. It appears that Whiting is correct. However, the error was harmless—because the superior court applied a *lower* standard of proof than the law required.

Next, Whiting contends that the superior court committed error when the court rejected his proposed mitigating factor of "small quantities", AS 12.55.155(d)(13), with respect to his attempted possession of cocaine with intent to distribute. As we explain here, we conclude that the superior court reached the correct result under the facts of Whiting's case.

Third, Whiting argues that the superior court should have found mitigating factor (d)(15) (small amount for personal use in one's home) with respect to his possession of the two oxycodone pills. For the reasons explained here, we conclude that the superior court misinterpreted the elements of this mitigator. We therefore direct the superior court to reconsider whether Whiting proved that these pills were intended solely for his personal use at home.

Finally, Whiting argues that the superior court erred when it rejected the conclusion of a substance abuse counselor that Whiting had been "doing well" in treatment. We conclude that the superior court had adequate grounds for rejecting the counselor's view of this matter.

*Background facts*

On October 31, 2006, Probation Officers Richard Pass and Conrad Brown were conducting routine home checks on various probationers. When they arrived at Whiting's residence, they observed Whiting pulling out of his driveway in a red car. Pass knew that Whiting's driver's license was revoked, so the officers pulled him over.

When the officers asked Whiting what he was doing, Whiting replied that he was going to the store for gas and chewing tobacco. Pass told Whiting that he intended to collect a urine sample from Whiting, and then Pass asked Whiting what the urine sample would reveal. Whiting admitted that his urine would test positive for methamphetamine.

The officers placed Whiting in restraints and placed him in the back of their patrol car. They then began to search the vehicle that Whiting had been driving (which Whiting claimed did not belong to him). Pass found a small black bag on the passenger seat of the car. Inside this bag, he found paraphernalia "consistent with drug use", including a very small plastic spoon, some pills, and a container with a white powdery substance.

A Wasilla police officer was summoned to the scene. This officer read the *Miranda* warnings to Whiting, and Whiting waived his rights. Whiting admitted that he would test positive for cocaine (in addition to the methamphetamine he had previously admitted). Whiting stated that the black bag was not his—that he had found it at an apartment complex down the street. However, Whiting admitted that the bag contained a couple of pain killers that he had purchased from an unidentified source, to help ease the pain of a recent surgery.

In addition, Whiting told the officer that he said he was in the process of buying the car that he had been driving—although he did not know who the seller was, and he was not sure whether the registration had been

---

**1.** AS 11.71.030(a)(1).

**2.** AS 11.71.040(a)(3)(A).

transferred yet. Whiting then asked to have an attorney present, and the interview was concluded.

The car was impounded, and a subsequent search of the vehicle yielded two electric scales with cocaine and methamphetamine residue, a baggie containing thirty-one smaller baggies with a Superman symbol on them, a baggie containing 22.8 grams of dimethylsulfone (a relatively inert substance which is commonly used as a cutting agent for methamphetamine)[3], another baggie containing 8.9 grams of sodium bicarbonate (i.e., baking soda), another baggie containing residue of cocaine and methamphetamine, a glass pipe, a pill crusher, three cut straws, aluminum foil, a lighter, and a pocket tin containing a cut straw, a plastic spoon, and five pills. Two of these pills were oxycodone, two more were acetaminophen/hydrocodone, and the fifth was tizanidine (a muscle relaxant).

A grand jury initially indicted Whiting for second-degree controlled substance misconduct, based on the allegation that he possessed the oxycodone with the intent to deliver it, and third-degree controlled substance misconduct, based on the allegation that he possessed the cocaine with the intent to deliver it, as well as two alternative counts of fourth-degree controlled substance misconduct (for possessing the oxycodone and the cocaine, regardless of any intent to deliver these substances). In addition, the district attorney's office filed an information charging Whiting with driving while his license was revoked, improper use of vehicle registration or title, and one count of fifth-degree controlled substance misconduct for possessing less than fifty tablets, ampules, or syrettes containing hydrocodone.

These charges were ultimately resolved by a plea bargain. The State dropped the second-degree controlled substance misconduct charge (possession of oxycodone with intent to deliver), and the State replaced the third-degree controlled substance misconduct charge (possession of cocaine with intent to deliver) with the lesser charge of *attempted* third-degree controlled substance misconduct. Whiting pleaded no contest to this reduced charge, as well as no contest to the fourth-degree controlled substance misconduct charge based on his possession of the oxycodone. In exchange for these pleas, the State dropped all the remaining charges.

*Whiting's sentencing*

Fourth-degree controlled substance misconduct is a class C felony.[4] Third-degree controlled substance misconduct is a class B felony,[5] but Whiting pleaded no contest to attempted third-degree controlled substance misconduct-which, pursuant to AS 11.31.100(d), is a class C felony. Thus, Whiting was sentenced for two class C felonies.

Whiting had three prior felony convictions (two convictions for felony driving under the influence, plus one conviction for third-degree weapons misconduct). Whiting was therefore a "third felony offender" for presumptive sentencing purposes, and he faced a presumptive sentencing range of 3 to 5 years' imprisonment for each of his offenses.[6]

Whiting conceded two of the aggravating factors listed in AS 12.55.155(c): (c)(15)—that he had more than two prior felonies; and (c)(20)—that he was on felony probation when the current offenses were committed. (The presence of these aggravators did not increase the superior court's sentencing authority: Whiting was a third felony offender, and thus his presumptive sentencing range already encompassed the 5–year maximum term of imprisonment for his crimes.)

Whiting proposed four of the mitigating factors listed in AS 12.55.155(d): (d)(8)—that his conduct was among the least serious conduct included in the definition of the offense; (d)(12)—that the facts surrounding the commission of his offenses and his previous offenses established that the harm caused by his conduct was consistently minor and in-

---

**3.** *See* National Drug Intelligence Center, *Louisiana Drug Threat Assessment* (May 2001), *available at* http://www.justice.gov/ndic/pubs0/666/meth.htm.

**4.** AS 11.71.040(d) (fourth-degree controlled substance misconduct is a class C felony).

**5.** AS 11.71.030(c).

**6.** AS 12.55.125(e)(3).

consistent with the imposition of a substantial period of imprisonment; (d)(13)—that his offenses involved small quantities of a controlled substance; and (d)(15)—that one of his offenses (his possession of oxycodone) involved the possession of a small amount of a controlled substance for personal use in his home.

The State contested these mitigators, with the exception of (d)(13) (small quantities). The State initially conceded mitigator (d)(13) (small quantities) with respect to both of Whiting's offenses, but the State later altered its position and argued that the "small quantity" mitigator did not apply to Whiting's attempt to commit third-degree controlled substance misconduct.

The State conceded that the amount of cocaine found in Whiting's possession was quite small; indeed, it was only trace amounts. However, the State pointed out that Whiting had not been convicted of possessing this trace amount with intent to deliver it. Rather, Whiting had been convicted of *attempting* to possess cocaine for the purpose of delivering it. The State argued that, given the amount and kinds of drug paraphernalia that Whiting had been carrying in the car, one could reasonably conclude that he was attempting to possess much more cocaine than the trace amount found in his possession—and, thus, the "small quantity" mitigator should not apply to that crime.

Whiting's sentencing judge, Superior Court Judge Kari Kristiansen, ultimately agreed with the State on this point. She found that the "small quantity" mitigator applied only to Whiting's conviction for possession of oxycodone, and not to his conviction for attempted possession of cocaine. She also found that Whiting had failed to prove his three other proposed mitigators.

At Whiting's sentencing hearing, the defense called Cathy Bishop, a woman who worked as a counselor at Nugens Ranch—a long-term residential substance abuse treatment center where Whiting had spent two years. Bishop testified that Whiting had done very well in the treatment program and

that, in her opinion, he was a good candidate for rehabilitation. Bishop acknowledged that Whiting had not completed the Nugens Ranch after-care program, and had in fact relapsed into drug use. Nevertheless, Bishop asserted that Whiting's relapse was not truly his fault—that it could be attributed to the fact that he was prescribed narcotics as pain medication for an injury. However, during Bishop's cross-examination by the prosecutor, it became apparent that Bishop did not know the nature of the new charges against Whiting, and that she had only a vague recollection of Whiting's criminal history.

When Judge Kristiansen analyzed Whiting's potential sentence under the *Chaney* criteria,[7] she first noted that Whiting had an extensive criminal history. Regarding the sentencing goal of rehabilitation, Judge Kristiansen expressed doubt about Whiting's prospects. The judge noted that Whiting had already been given several opportunities for rehabilitation, and she stated that she did not find Bishop's testimony particularly helpful in this regard. She noted that Bishop did not seem to be well-advised as to Whiting's present circumstances, and she expressed doubts whether Bishop understood what "doing well" in drug treatment meant. Judge Kristiansen also found that Whiting needed to be confined to protect the community.

Ultimately, Judge Kristiansen sentenced Whiting to a term of 5 years' imprisonment with 1 year suspended (4 years to serve) for the attempted possession of cocaine conviction, and to a concurrent term of 5 years' imprisonment with 4 years suspended (1 year to serve) for the possession of oxycodone. (In other words, Whiting received a total of 4 years to serve for these two crimes.) Judge Kristiansen also revoked Whiting's probation, requiring to him to serve the remaining 2 years of his previous felony sentence.

*Whether the superior court applied the wrong standard of proof when deciding whether Whiting had proved his proposed mitigating factors*

---

7. *See State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970). The *Chaney* sentencing criteria

are now codified in AS 12.55.005.

When the State proposes aggravating factors or a defendant proposes mitigating factors in a felony sentencing proceeding governed by the presumptive sentencing law, the aggravating and mitigating factors must be proved by clear and convincing evidence. AS 12.55.155(f).

At Whiting's sentencing hearing, Judge Kristiansen stated, "I do not find that [Whiting's proposed mitigating factors have] been proven by a preponderance [of the evidence]." Whiting correctly points out that this was the wrong standard of proof.

However, this error is harmless because it ran in Whiting's favor: Judge Kristiansen applied a lower standard of proof than the law required. Because the judge concluded that Whiting had not proved his mitigators by a preponderance of the evidence, it necessarily follows that she would have concluded that he failed to prove these mitigators by clear and convincing evidence.

*Whether Whiting proved the mitigating factor of "small quantity" with respect to his attempted possession of cocaine for purposes of delivery*

As explained above, one of Whiting's proposed mitigating factors was AS 12.55.155(d)(13)—that his offenses involved small quantities of a controlled substance. The State conceded that this mitigator applied to the fourth-degree count (*i.e.*, Whiting's possession of the two pills of oxycodone), but the State argued that the "small quantity" mitigator did not apply to the attempted third-degree count (*i.e.*, Whiting's attempt to possess cocaine for purposes of delivery).

The State acknowledged that Whiting had only trace amounts of cocaine in his possession. However, the State argued that the surrounding circumstances—especially, Whiting's possession of a large number of baggies, a set of scales, and a substantial amount of cutting agent—showed that Whiting was attempting to obtain and distribute a much larger quantity of cocaine.

When Judge Kristiansen made her ruling on mitigator (d)(13), she stated, "I do not find ... that [this mitigator] appears to apply to Count II [*i.e.*, the attempted third-degree count]." The judge offered no further explanation of her ruling.

On appeal, Whiting argues that Judge Kristiansen's statement suggests that she believed that, as a matter of law, mitigator (d)(13) *never* applies to the attempted possession of controlled substances. Given the evidence in Whiting's case, and given the specific argument to which Judge Kristiansen was responding, Whiting's suggested interpretation of the judge's remark appears unlikely. In context, Judge Kristiansen's remark appears to mean that she agreed with the State's analysis of this proposed mitigator.

In other words, the judge did not mean that mitigator (d)(13) could never apply to an attempted possession of controlled substances; rather, she declared that this mitigator was not proved with respect to the particular attempted possession charged against Whiting.

Whiting also argues that, when the superior court assessed mitigator (d)(13), the only relevant factor was the amount of cocaine found in Whiting's possession-and that his possession of the baggies, scales, and cutting agent was irrelevant. We disagree. Because Whiting was convicted of attempted possession, it was his burden to prove by clear and convincing evidence that he *attempted* to possess only a small quantity of cocaine. Thus, the fact that the police found only *trace amounts* of cocaine in Whiting's possession was not dispositive; this circumstance had to be weighed against the other circumstances described above: the fact that Whiting had thirty-one small baggies, two scales with cocaine residue on them, and a substantial quantity of cutting agents. Given this record, we uphold Judge Kristiansen's ruling that Whiting failed to prove the "small quantity" mitigator.

*Whether Whiting proved the mitigating factor of "small amount ... for personal use in the defendant's home" with respect to his possession of the two pills of oxycodone*

With respect to Whiting's conviction for fourth-degree controlled substance misconduct based on his possession of two pills containing oxycodone, Whiting proposed mit-

igating factor (d)(15): that his offense "involved the possession of a small amount of a controlled substance for personal use in the defendant's home".

It is undisputed that the two oxycodone pills were discovered in Whiting's car as he was driving away from his residence. On appeal, the State argues that these circumstances—*i.e.*, that the pills were discovered in Whiting's car, and that he was driving *away* from his home—created sufficient ambiguity in the situation to justify Judge Kristiansen's conclusion that Whiting had failed to prove this mitigator by clear and convincing evidence.

However, the sentencing transcript strongly suggests that Judge Kristiansen did not follow this reasoning when she rejected the proposed mitigator. At the sentencing hearing, the prosecutor argued that mitigator (d)(15) was "clearly not applicable [because Whiting] was driving in his car [and] this was not personal use". In other words, the prosecutor argued that mitigator (d)(15) could not apply because the oxycodone pills were not located in Whiting's residence. And Judge Kristiansen apparently adopted this view of the law when she issued her ruling on this mitigator: "As to [mitigator (d)(15) ], I do not find that [it has] been proven by the preponderance[.] I agree with the State's arguments that ... these [controlled substances] were not found in the defendant's home".

On appeal, Whiting argues that the place where the pills were found is not dispositive—that mitigator (d)(15) focuses instead on where and how the defendant *intends* to use the controlled substance, regardless of where the controlled substance might be found at the time of the defendant's arrest.

Mitigator (d)(15) is worded ambiguously on this point. AS 12.55.155(d)(15) states that this mitigator applies to cases where "the defendant is convicted of an offense specified in AS 11.71 [*i.e.*, a controlled substance offense] and the offense involved the posses-

sion of a small amount of a controlled substance for personal use in the defendant's home". The ambiguity arises from the fact that it is difficult to tell whether the phrase "in the defendant's home" modifies "possession" or, instead, "for personal use".

In other words, the statute could be read as applying to possession of a small amount of a controlled substance in one's home, when that possession is for personal use—or, alternatively, the statute could be read as applying to possession of a small amount of a controlled substance in any location, when that possession is for personal use in one's home.

The State's argument in the superior court, and Judge Kristiansen's ruling, appear to be based on the *first* potential reading of the statute—*i.e.*, that the mitigator applies only when the defendant's possession is "in the defendant's home". On appeal, however, the State's argument appears to be based on the *second* potential reading of the statute (in other words, Whiting's proposed interpretation)—*i.e.*, that the mitigator hinges on a defendant's intention to use the controlled substance in their home. The State's appellate brief adopts this second interpretation of the mitigator, but then argues that the facts of Whiting's case (in particular, the fact that he was driving *away* from his home) justify a finding that Whiting had failed to prove this aggravator by clear and convincing evidence.

Neither party has provided us with any case law or legislative history to resolve the ambiguity in the wording of this statute. There is, however, a canon of statutory construction that counsels us to interpret the statute as Whiting proposes. That canon, *"reddendo singula singulis"* (also known in English as the "last antecedent rule"), is the doctrine that limiting or restrictive clauses in a statute are normally to be construed as referring to (that is, as limiting or restricting) the immediately antecedent clause of the statute.[8] Under this doctrine, we should in-

---

**8.** See *Linkus v. Maryland State Board of Heating Ventilation, Air–Conditioning, and Refrigeration Contractors,* 114 Md.App. 262, 689 A.2d 1254, 1262 (1997); *Boeing Co. v. Washington Department of Licensing,* 103 Wash.2d 581, 693 P.2d

104, 108 (1985); *McKenzie Tank Lines, Inc. v. McCauley,* 418 So.2d 1177, 1179–1180 (Fla.App. 1982); *In re Thompson,* 79 Ill.2d 262, 37 Ill.Dec. 607, 402 N.E.2d 609, 611 (1980). See generally Singer, *Sutherland on Statutes and Statutory Con-*

terpret the phrase "in the defendant's home" as referring to or limiting the immediately preceding clause, "for personal use". In other words, the mitigator applies when the defendant possesses a small amount of a controlled substance for the purpose of using it personally in their home.

Moreover, this' interpretation of the statute appears to be reasonable. The fact that the legislature enacted mitigator (d)(15) implies that the legislature concluded that people who unlawfully possess controlled substances should not be punished as severely if they are merely using small amounts of controlled substances in their homes. Most controlled substances can not be grown or manufactured at home; the substances must be purchased elsewhere and then brought home. Thus, in instances where a person is apprehended outside their home after purchasing a small amount of a controlled substance, it would seemingly fulfill the legislature's policy to allow the person to argue and prove that they only intended to use the controlled substance personally, and that they did not intend to use the controlled substance until they got home.

Finally, to the extent that a statute defining criminal liability remains ambiguous even after we subject it to recognized methods of statutory construction, we must resolve that ambiguity against the government.[9]

For these reasons, we conclude that Whiting's proposed interpretation of mitigator (d)(15) is the correct one. We hold that proof of this mitigator does not hinge on where the controlled substance is found, but rather on where and for what purpose the defendant intends to use the controlled substance.

As explained above, the State (in its appellate brief) appears to accept this interpretation of the mitigator, and the State argues

that, under the facts of Whiting's case, Judge Kristiansen would have been justified in finding that Whiting did not intend to use the controlled substance personally in his home. The problem with the State's argument is that, from the record of the trial court proceedings, it appears that Judge Kristiansen relied on the *other* interpretation of mitigator (d)(15)—that is, the wrong interpretation— when she ruled that Whiting had failed to prove this mitigator.

The judge did not reach the issue of Whiting's intentions with respect to the controlled substance; rather, she ruled that the mitigator did not apply because Whiting possessed the controlled substance outside his home. For this reason, we must vacate the judge's ruling and remand this issue to the superior court for reconsideration.

*Whether the superior court misconstrued or improperly evaluated the testimony of substance abuse counselor Cathy Bishop*

At his sentencing hearing, Whiting presented the testimony of Cathy Bishop, his former substance abuse counselor. Bishop testified that Whiting had good prospects for rehabilitation. However, although Bishop seemed to remember Whiting well, she was unfamiliar with Whiting's conduct underlying the current charges, and she had not seen him for about a year before the sentencing hearing.

During her sentencing remarks, Judge Kristiansen stated that she did not find Bishop's testimony helpful. The judge concluded that Bishop was not "well-[informed] as to the circumstances of the defendant at the present time". And, referring to Bishop's comment that Whiting "had done well [in treatment] for some time", Judge Kristiansen stated, "I just don't find that she [*i.e.,* Bishop] understands what that means".

On appeal, Whiting takes issue with Judge Kristiansen's last comment—her assertion

---

*struction* (6th ed.2007), § 47:26, Vol. 2A, pp. 438–442 ("[When] a sentence contains several antecedents and several consequents[,] they are to be read distributively. The [clauses] are to be applied to the subjects that seem most properly related by context and applicability.").

9. *See Brookins v. State,* 600 P.2d 12, 17 (Alaska 1979); *Ned v. State,* 119 P.3d 438, 446–47 (Alaska App.2005); *Wells v. State,* 102 P.3d 972, 976 (Alaska App.2004); *Whitesides v. State,* 88 P.3d 147, 151 (Alaska App.2004); *State v. ABC Towing,* 954 P.2d 575, 579 (Alaska App.1998); *Magnuson v. State,* 843 P.2d 1251, 1253 (Alaska App. 1992).

that Bishop did not understand the concept of "doing well" in substance abuse treatment. Whiting notes that Bishop worked as a substance abuse counselor for three years, and that her experience and qualifications in this area were not contested at the sentencing hearing. Whiting further argues that Bishop's conclusion regarding Whiting's prospects for rehabilitation was both plausible and supported by the evidence that Whiting completed nearly two years of treatment, completed all twelve AA steps, maintained sobriety while at the treatment facility, and completed all homework assignments and group sessions.

Notwithstanding all of this, the prosecutor's cross-examination of Bishop revealed that Bishop was unfamiliar with Whiting's criminal history and present circumstances, and that she had not seen him for a year when she testified. It was also revealed that Whiting did not finish his treatment program because he had a relapse. These circumstances provided at least a reasonable basis for Judge Kristiansen to question Bishop's favorable evaluation of Whiting's prospects for rehabilitation.

Even assuming that Judge Kristiansen spoke over-hastily when she declared that Bishop did not understand what "doing well" in treatment means, the real underlying issue is whether Judge Kristiansen had a reasonable basis for viewing Bishop's favorable evaluation with skepticism. Because the record reveals a reasonable basis for the judge's skepticism, we find no reversible error.

### Conclusion

We affirm the actions of the superior court in all respects except one: we vacate the superior court's ruling with respect to mitigator (d)(15). The superior court must reconsider whether Whiting proved this mitigator by clear and convincing evidence.

Whiting alleged that this mitigator applied to only one of his offenses: the charge of fourth-degree controlled substance misconduct, based on his possession of the two pills of oxycodone. Accordingly, if the superior court finds that Whiting has proved this mitigator, the court should then reconsider Whiting's sentence for this offense.

However, with respect to Whiting's sentence for his other offense (attempted third-degree substance abuse misconduct), the sentencing decision of the superior court is affirmed.