554 So.2d 1312 (1989)
Dorothy S. LANG, et al.
v.
Mrs. Freddie M. CAGE, et al.
No. CA 88 1919.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
Rehearing Denied February 1, 1990.
Writ Denied March 30, 1990.
*1313 Cyrus J. Greco, Baton Rouge, for Dorothy S. Lang, Regina Lang Cable, Isiah Lang, III.
Jeff Calmes, Sumpter B. Davis, Baton Rouge, for Annie Mae Jackson, Katie Mae Williams, Ruth Bell Tircuit.
Paul Marks, Jr., Glen Scott Love, Baton Rouge, for Dairyland Ins. Co., Mrs. Freddie H. Cage.
Christine Lipsey, Borris F. Navratil, Baton Rouge, for Marvin W. Shoemaker, Yellow Freight System.
Before EDWARDS, LANIER and FOIL, JJ.
FOIL, Judge.
This litigation involves the collision of a car and a tractor-trailer rig. Defendants, Marvin W. Shoemaker and Yellow Freight System, Inc. (Yellow Freight), the driver and owner of the truck, respectively, have appealed from a judgment finding Shoemaker 30% at fault in causing the accident. Plaintiffs filed an answer to the appeal. We reverse.

FACTS
On November 12, 1983, at approximately 12:05 a.m., Freddie M. Cage was driving a 1977 Pontiac Grand Prix south on Louisiana Highway 1. Isiah Lang, Jr. and Greg Tircuit were guest passengers in the car. Marvin W. Shoemaker was driving an 18-wheeler, owned by Yellow Freight, in a northbound direction on the same highway. Cage made a left-hand turn and stopped in the neutral ground at the intersection of Highway 1 and Vicknair Street. The collision occurred when the Cage vehicle rolled out into the oncoming northbound flow of traffic where it was struck dead center on the passenger side by the approaching Yellow Freight truck. The two vehicles locked together, skidded in a northerly and slightly easterly direction along the highway, across the shoulder and down into a grassy area on the side of the highway. Shortly after coming to rest, both vehicles burst into flames and Cage, Lang and Tircuit were burned to death.
These wrongful death and survival actions were instituted by the surviving heirs of Isiah Lang, Jr. and Greg Tircuit. Remaining as plaintiffs at trial were: Isiah Lang, III and Regina Lang Cable, major children of Isiah Lang, Jr.; Annie Mae Jackson as tutrix of four minor children born of a common law marriage with Isiah Lang, Jr.; Katie Mae Williams as tutrix of three minor children also born of a common law marriage with Isiah Lang, Jr.; and Mrs. Ruth Bell Tircuit, mother of Greg Tircuit. Remaining as defendants at trial were Marvin W. Shoemaker and Yellow Freight System, Inc.
At trial, Mr. Shoemaker testified that at the time of the accident he was completing a route from Jackson, Mississippi, to the Port Allen Terminal of Yellow Freight. His tractor-trailer rig, including the load he was carrying, weighed 72,000 pounds. He exited I-10 at the Mississippi River and proceeded north on Highway 1. He travelled *1314 through the town of Port Allen in fifth gear, observing the speed limit of 40 miles per hour (mph). Past the town, the speed limit increases to 55 mph, so he began to accelerate in fifth gear. After reaching 50 to 52 mph, he shifted into sixth gear. Shoemaker testified the truck will run 58-59 mph in sixth gear, but he doubted he was going that fast because he was not "wide open." He observed the Cage vehicle coming towards him southbound. When the car began making a left turn, he hit his brakes, slowed down and shifted into fifth gear. When the Cage vehicle stopped, he released the brakes and resumed forward travel. Shoemaker stated the Cage vehicle then rolled out right in front of him when he was approximately a truck's length away from it. He attempted to lock his brakes and steer to the right to avoid a collision, but was unsuccessful. The accident occurred one mile from the northern city limit of Port Allen.
Mr. James Bernell Shelton is an area maintenance manager employed by Yellow Freight. He testified that the truck involved in this accident was a Cummings diesel with a 6-speed Spicer transmission. Mr. Shelton stated the truck could reach a top speed of 48-51 mph in fifth gear and 58-62 in sixth gear.
In order to prove that Mr. Shoemaker was speeding at the time of the accident, plaintiffs presented the testimony of an expert accident investigator and an expert accident reconstructionist. Lawrence King, a sergeant with Louisiana State Police Troop A, visited the accident scene approximately three years after its occurrence armed with the accident report and photographs of the scene. He made his own observations and measurements. He also conducted a skid test, using a 1986 Chevrolet Caprice, to obtain the coefficient of friction of the roadway. Using a mathematical and scientific formula, he made various computations, based on certain assumptions. Mr. King testified that, prior to braking, the truck should have been going a minimum of 62.86 mph. He computed the stopping distance at a speed of 55 mph versus 62 mph. Mr. King concluded that at 55 mph, the Cage vehicle might have cleared the path of the truck or the impact might have occurred on a different part of the vehicle. Mr. Andrew McPhate a mechanical engineer, also visited the scene of the accident and did a personal survey. He, too, had input data including the accident report and photographs. Mr. McPhate testified that, prior to braking, the truck was going 61-64 mph. He concluded that at 55 mph, the automobile would have cleared the path of the truck and the accident would not have occurred. However, Mr. McPhate admitted on cross examination that his final conclusion as to the truck's speed was based on some degree of speculation and estimation. His calculations were based on assumptions that may not be correct, or may be only partially correct. He stated that many factors were involved which would affect the measurements and accuracy of the results obtained.
On the issue of the truck's speed, defendants presented the expert testimony of Mr. James F. Lafferty, an accident reconstructionist and mechanical engineer. Mr. Lafferty used input data consisting of the investigating officer's report, measurements made by an insurance adjustor, and photographs. He used the energy conservation law to make his computations, rather than the laws of motion used by plaintiff's expert, Mr. King. One of the components or assumptions used in King's formula is the speed of the Pontiac. Mr. Lafferty stated that King's estimate of the car's speed was worse than speculation in that it was totally inaccurate. Moreover, Mr. Lafferty testified that it is not scientific to measure the coefficient of friction as King did, using an automobileyou must use an 18-wheeler under the same conditions (e.g. weight) as those present in this case. Mr. Lafferty estimated that the truck was going 41.3 mph before brake application.
Evidence was introduced at trial indicating that Cage, Lang and Tircuit had been drinking alcohol most of the evening prior to the accident. Mrs. Freddie Cage testified that the three men were drinking beer at her grocery store until 10:00 p.m. that night. Tircuit had been drinking since 3:30 *1315 p.m., Lang since 5:30 p.m., and Cage since about 7:30 p.m. when he got off of work. Elizabeth Collins testified she saw Lang at a bar after 11:00 p.m., with Cage and Tircuit. A blood sample, removed from the chest area, was taken from Cage's body after the accident at the funeral home. It was determined that the blood had an alcohol content of .37%.
After a bifurcated trial on the issue of liability and damages, the trial court found as follows with respect to liability:
1) Freddie Cage was negligent and 70% at fault due to operating a vehicle in an extreme state of intoxication;
2) Marvin Shoemaker was negligent and 30% at fault due to exceeding the speed limit by as much as six to eight mph;
3) Under a comparative negligence theory, Lang and Tircuit were 40% at fault, each, due to riding with an intoxicated driver.
The trial court subsequently made the following damage awards:
1) $22,500.00 to Isiah Lang, III;
2) $18,000.00 to Regina Lang Cable;
3) $30,000.00 each to the seven minor illegitimate children of Isiah Lang, Jr.; and
4) $130,000.00 to Ruth Bell Tircuit.
Judgment was rendered in favor of these plaintiffs against Marvin Shoemaker and Yellow Freight, who were held to be liable for 18% of the above awards due to a reduction in recovery owing to the guest passenger's fault [.30 × (1.00 - .40)].
It is from this judgment that defendants bring the instant appeal. They urge as their sole assignment of error that the trial court erred in holding that Marvin Shoemaker was exceeding the speed limit by six to eight mph and therefore was 30% at fault in causing the accident.
Plaintiffs, except for the two major children of Isiah Lang, Jr., answered the appeal and assert the following as error:
1) The trial court erred in attributing any percentage of comparative fault to Isiah Lang, Jr.;
2) The trial court erred in attributing any percentage of fault to Greg Tircuit;
3) The award of $30,000 to the children of Isiah Lang by Annie Mae Jackson and Katie Mae Williams should be increased to the sum of $100,000 per child; and
4) The legal interest awarded from January 1, 1988, until paid at the rate of 9.75% should be modified to reflect the applicable legal interest determined by law.
As we find merit in defendants' assignment of error, we pretermit discussion of those issues raised in plaintiff's answer.

SHOEMAKER'S NEGLIGENCE
Defendants argue that the trial court erred in finding that Mr. Shoemaker was negligent because the evidence did not show that Shoemaker was travelling at a speed in excess of the posted speed limit. The trial court, in written reasons for judgment, stated:
The plaintiffs allege that the defendant truck driver, Marvin Shoemaker, was speeding. This question was highly contested and heavily addressed by expert witnesses for both sides at trial. After considering all the evidence adduced at trial regarding the matter of the truck's speed, it is the Court's opinion that the weight of the evidence indicates that the truck was exceeding the speed limit by as much as six to eight miles per hour.
Clearly a driver has a duty not to expose the general vehicular public to an increased liklihood of harm associated with operating a vehicle at an excessive speed. Marvin Shoemaker and Yellow Freight breached this duty. Hence, the fatal harm ultimately encountered by plaintiffs deceased fell within the scope of the duty breached by the defendants, Marvin Shoemaker and Yellow Freight. Due to the truck's excessive speed, it became proportionately more difficult and apparently impossible for Marvin Shoemaker to avoid the fatal accident. Therefore Marvin Shoemaker and Yellow Freight's conduct constitutes fault for purposes of this action.
In determining whether liability exists under the facts of a given case, we must *1316 analyze the situation using a duty-risk formula, in which we consider these questions:
1) Was the affirmative conduct a cause in fact of the resulting harm?
2) Was there a duty to protect this plaintiff from this type of harm arising in this matter?
3) Was that duty breached?
Molbert v. Toepfer, 550 So.2d 183, (La. 1989).
We disagree with the trial court's finding that the weight of the evidence shows that Mr. Shoemaker was exceeding the speed limit by as much as six to eight mph. The conclusions as to the truck's speed reached by the different experts were premised on various assumptions, the slightest variance of which would lead to totally different results. Mr. McPhate admitted that such conclusions involved speculation and estimation. However, the trial court's findings of fact are to be accorded great weight on review and may not be disturbed absent a finding that they are manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La. 1973). As there was evidence upon which the trial court could base its factual finding regarding the truck's speed, we conclude such finding did not constitute manifest error.
Thus, conceding the fact that the truck was slightly exceeding the speed limit, was such conduct a cause in fact of the collision? The cause in fact test requires that but for the defendant's conduct, the injuries would not have been sustained. Technically, had Mr. Shoemaker not been travelling several miles over the speed limit he would not have been at the exact location at the exact moment the collision occurred. We find no manifest error in the trial court's ruling that Shoemaker's speed was, in the technical sense, a "but for" cause of the accident.
Next, did Mr. Shoemaker owe a duty to protect these plaintiffs from the type of harm involved, arising in the manner in which the accident occurred? We conclude that he did not. As a driver, Shoemaker had a duty to use reasonable care in the operation and control of his vehicle so as not to create an unreasonable risk of harm with regard to other motorists. This duty encompassed within its scope the risk that a collision might occur and guest passengers might be injured. However, we decline to find that said duty extends to or was intended to protect against injuries arising in the manner in which they did in this case.
The jurisprudence of this state is well settled that a motorist who attempts to make a left turn from a public highway is required to ascertain in advance that the way is clear and that the turn can be made safely and without endangering oncoming or overtaking vehicles and he must yield the right of way to such vehicles. The failure of a left turning motorist to make such a determination and to exercise the required degree of caution before undertaking to make such a turn constitutes negligence. Plaisance v. Epherson, 466 So.2d 485, 487 (La.App. 5th Cir.1985); Ryder v. Trisler, 367 So.2d 1257, 1259 (La. App. 3d Cir.1979). Consequently, a motorist travelling on a high-speed, multilane highway is not required to anticipate that a motorist entering the highway will not yield the right of way. Such motorist can indulge in the assumption that the other driver will observe the law and yield the right of way until he sees, or should see, that the other car has not observed, or is not going to observe, the law. See Bland v. Interstate Fire and Casualty Co., 311 So.2d 480, 482 (La.App. 4th Cir.1975); Fontenot v. Lucas, 228 So.2d 211, 213 (La.App. 3d Cir.1969), writ refused, 255 La. 279, 230 So.2d 587 (La.1970).
After thoroughly reviewing the entire record, we find it reflects that the accident and the consequent injuries resulted solely from the negligent conduct of Freddie Cage, namely, his exercise of poor judgment due to his intoxicated state in suddenly and unexpectedly pulling out directly in front of Mr. Shoemaker, who had no control over the matter. The record does not indicate that Shoemaker failed to do anything he should have done which would have prevented the accident once he was or should have been aware of the impending danger. In fact, the record shows that *1317 when Shoemaker observed the Cage vehicle turn left into the neutral ground he applied his brakes and downshifted. Only when he saw the car stop did he release his brakes, relying on the act of stopping as indicating that Cage was going to yield the right of way. By the time Shoemaker knew or should have known that Cage was not going to respect his right of way, it was too late for him to take any evasive action, regardless of his speed.
We conclude that the trial court erred as a matter of law in finding that Shoemaker owed a duty to protect these plaintiffs from the harm incurred arising in the manner in which the accident took place. This court finds that although Shoemaker may have slightly exceeded the speed limit, his speed was not excessive. The superseding, intervening act of Freddie Cage in entering the highway without yielding the right of way amounts to gross negligence which places plaintiffs outside the scope of Shoemaker's duty and relieves defendants of any liability. See Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir.), writ denied, 420 So.2d 982 (La. 1982).
For the above reasons, the judgment of the trial court finding that defendants were 30% at fault in causing plaintiff's damages as well as the award of damages is reversed. Costs are assessed against plaintiffs.

REVERSED