672 S.E.2d 282

**STATE of West Virginia ex rel. Prosecuting Attorney of Kanawha County, West Virginia, Petitioner Below, Appellee,**

v.

**BAYER CORPORATION, Respondent Below, Appellant.**

No. 33871.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2008.

Decided Nov. 5, 2008.

Concurring and Dissenting Opinion of Justice Benjamin Jan. 9, 2009.

148

Herschel H. Rose III, Steven R. Broadwater, Rose Law Office, Charleston, for Appellant.

Stephen B. Revercomb, Prosecuting Attorney, Robert W. Schulenberg III, Assistant Prosecuting Attorney, Charleston, for Appellee.

DAVIS, Justice:[1]

This is an appeal by Bayer Corporation, respondent below (hereinafter referred to as "Bayer"), from a final order of the Circuit Court of Kanawha County that reversed a tax exoneration decision by the Kanawha County Commission (hereinafter referred to as "the Commission"). In this appeal, Bayer makes the following assignments of error: (1) the Prosecuting Attorney of Kanawha County did not have authority to challenge the Commission's ruling in circuit court, (2) the circuit court erred in applying a de novo standard of review, and (3) the circuit court erred in reversing the Commission's ruling on the merits of the issues presented. In addition, the Prosecuting Attorney of Kanawha County, petitioner below (hereinafter referred to as "the Prosecutor"), has made a cross assignment of error. The Prosecutor argues that the Commission applied the wrong standard of proof in assessing the evidence.[2] After a careful review of the

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. A joint brief has been filed in this matter by the Kanawha County Assessor and the Kanawha County Public Library Board, as parties to this litigation. During the proceedings before the Commission the Assessor's office was present and represented by counsel. The Library Board was neither present nor represented by counsel at the proceeding before the Commission. Dur-

briefs and record, and having listened to the oral arguments of the parties, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

It appears from the record that at some point in 2003, Bayer was involved in litigation with the Department of Tax and Revenue in a matter unrelated to the instant case. During the course of discovery in that litigation, an attorney for Bayer determined that Bayer had made errors in its tax returns for the years 2001, 2002, and 2003. As a consequence of believing that errors were made for those tax years, on August 21, 2003, Bayer made an application to the Commission for relief from tax reporting errors for the years 2001, 2002, and 2003. The errors alleged by Bayer included: (1) reporting inventory data for the wrong month, (2) reporting raw materials as finished goods, (3) reporting materials as being in inventory that were actually in transit, and (4) granting an exemption for raw materials in 2003. As a result of the errors, Bayer sought a total reduction in taxes in the amount of $456,747 for all three years.

On November 6, 2003, the Commission held a hearing on Bayer's application. Bayer was represented by counsel at the hearing and the State (and all affected lower governmental entities) was represented by counsel for the Tax Commissioner. Bayer called three witnesses during the hearing. The State cross examined two of Bayer's witnesses, but did not call any witnesses of its own. At the conclusion of all the evidence, the Commission, by a vote of 2–1, granted Bayer the relief requested.

The record indicates that by letter dated November 19, 2003, Bayer notified the Prosecutor that it had applied to the Commission for relief from erroneous tax assessments for the years 2001, 2002, and 2003. The letter further notified the Prosecutor that a hearing on the matter would be held before the Commission on November 20, 2003.

On November 20, 2003, a hearing was held by the Commission. The hearing was attended by Bayer, but neither the Prosecutor nor the Tax Commissioner were present.[3] The hearing appears to have been called in order for the Commission to discuss the contents of the order granting the relief Bayer requested.[4] The Commission voted to approve the order as drafted, but delayed entry of the order until the dissenting Commissioner had an opportunity to compose a written dissent.

On February 19, 2004, the Commission entered the order granting Bayer the relief it sought. On March 17, 2004, the Prosecutor filed a petition for a writ of certiorari with the circuit court seeking to reverse the decision of the Commission. After reviewing the

---

ing the first hearing, it was made clear by the Commission that the Assessor's office did not have standing as a party. Instead, the Commission indicated that the Assessor's office was at the proceeding "to give us, for lack of a better word, help to understand the issues[.]" Although the Assessor was not a party in the proceedings before the Commission, and the Library Board was neither a party nor present, both entities appeared as parties during the proceedings in the circuit court. Bayer filed a motion in the circuit court seeking to have the case dismissed because "neither the state nor any of the various levying bodies, named or unnamed, are proper parties to this appeal[.]" The circuit court denied the motion and permitted the Library Board and the Assessor's office to intervene. In this appeal, Bayer argues that the Assessor's office and the Library Board do not, in essence, have standing as parties to this appeal. We agree. The issue raised by Bayer before the Commission involved a request for repayment of an erroneous tax assessment. As discussed more

fully in the body of this opinion, under W. Va. Code § 11–3–27(a) (2000) (Repl.Vol.2008) the only entities empowered to defend against the claim brought by Bayer were the Tax Commissioner and the Prosecutor. Consequently, neither the Library Board nor the Assessor's office had standing in this matter. To the extent that the Library Board and the Assessor's office had an interest in this matter, that interest was statutorily required to be defended by the Tax Commissioner or the Prosecutor. However, insofar as the Library Board and the Assessor's office have filed a joint brief in this appeal, we will treat the brief as an amicus brief in support of the Prosecutor.

3. Counsel for the Assessor's office was at the hearing.

4. During the hearing it was indicated that the Prosecutor intended to appeal the Commission's decision.

case based upon the record, the circuit court entered an order on August 10, 2006, reversing the decision of the Commission. Bayer subsequently filed a motion for new trial and a motion to alter or amend the judgment. The circuit court denied the motions by order entered April 20, 2007. Bayer subsequently timely filed this appeal.

## II.

### STANDARD OF REVIEW

■ This case requires the Court to review a certiorari order of the circuit court. This Court applies an abuse of discretion standard in reviewing a circuit court's certiorari judgment. *See* Syl. pt. 1, in part, *Michaelson v. Cautley*, 45 W.Va. 533, 32 S.E. 170 (1898) ("[T]he circuit court has a large discretion in awarding [a writ of certiorari] ... and, unless such discretion is plainly abused, this court cannot interfere therewith."). *See also* Syllabus, in part, *Snodgrass v. Board of Educ. of Elizabeth Indep. Dist.*, 114 W.Va. 305, 171 S.E. 742 (1933) ("When, after judgment on certiorari in the circuit court, a writ of error is prosecuted in this court to that judgment, a decision of the circuit court on the evidence will not be set aside unless it clearly appears to have been wrong."). It has been said that "the scope of review under the common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only into the manner in which the decision was reached." *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn.Ct.App.2001). However, to the extent that our review involves a question of law, our review is de novo. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these standards in view, we turn to the issues presented.

5.  Rule 17(a) states, in relevant part, that "[e]very action shall be prosecuted in the name of the real

## III.

### DISCUSSION

#### A. The Prosecutor Had Authority to Challenge the Commission's Decision in Circuit Court

■ The first issue we address is Bayer's contention that the Prosecutor did not have authority to file a petition for a writ of certiorari with the circuit court to challenge the decision of the Commission. Bayer raised this issue before the circuit court and it was rejected. In this appeal Bayer contends that the Prosecutor does not have authority to challenge the Commission's decision, because the Prosecutor is not the real party in interest as required by Rule 17(a) of the West Virginia Rules of Civil Procedure.[5] Bayer misunderstands the application of Rule 17(a), which has no application to a party who is defending against a claim. Rule 17(a) applies only to a party asserting a claim. We addressed this precise issue in *Keesecker v. Bird* as follows:

> Our reading of the language of Rule 17(a) is that it plainly indicates that its analysis applies only to claimants, that is, individuals who "prosecute[ ]," "sue," or who may bring a lawsuit in the name of the state or others. The real party in interest analysis focuses upon a plaintiff, defendant, petitioner, or intervenor that is asserting a claim, counter-claim or cross-claim, as opposed to a defendant or respondent, that is, the persons against whom a claim is made.

200 W.Va. 667, 676, 490 S.E.2d 754, 763 (1997).

*Keesecker*, 200 W.Va. at 676, 490 S.E.2d at 763. *See also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90, 126 S.Ct. 606, 614, 163 L.Ed.2d 415 (2005) ("Rule [17(a) ], as its text displays, speaks to joinder of *plaintiffs*, not defendants.").

In the instant proceeding, the Prosecutor has not asserted a claim against Bayer. The Prosecutor is challenging a ruling by the

party in interest."

Commission that granted a claim asserted by Bayer.[6]

To resolve the issue of the Prosecutor's authority to challenge the Commission's ruling, we must look to the applicable statutes. In this regard, we have held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "In order to safeguard the expressed legislative intention, it is imperative to view the precise language and terms employed in the statute at issue. Only when such language is ambiguous may we interpret and construe a statutory provision." *Webster County Comm'n v. Clayton*, 206 W.Va. 107, 112, 522 S.E.2d 201, 206 (1999). *See also* Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied.").

■ The statute authorizing Bayer to seek relief from the erroneous tax assessments is W. Va.Code § 11–3–27 (2000) (Repl.Vol. 2008). The relevant provision in the statute provides, in part, as follows:

> Any taxpayer ... claiming to be aggrieved by any entry in the property books of the county ... resulting from a clerical error or a mistake occasioned by an unintentional or inadvertent act as distinguished from a mistake growing out of negligence or the exercise of poor judgment, may, within one year from the time the property books are delivered to the sheriff or within one year from the time

such clerical error or mistake is discovered or reasonably could have been discovered, apply for relief to the county commission of the county in which such books are made out.... Before the application is heard, the taxpayer shall give notice to the prosecuting attorney of the county.... *"[A]ny order or judgment shall show that either the prosecuting attorney or tax commissioner was present defending the interests of the state, county and districts [.]"*

W. Va.Code § 11–3–27(a) (emphasis added). It is clear from this statute that either the Tax Commissioner or the Prosecutor could represent the interests of the state, county and districts in this matter before the Commission. However, the statute does not provide express authority for either the Tax Commissioner or the Prosecutor to challenge such a decision.[7]

In order to resolve the issue of whether the Prosecutor may challenge the Commission's decision, we believe that W. Va.Code § 11–3–27 should be read in para materia with W. Va.Code § 11–3–25 (1967) (Repl.Vol. 2008). This Court has held that "[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent." Syl. pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975).

West Virginia Code § 11–3–25 sets out the appeal procedure from a tax assessment ruling, by a County Commission sitting as a Board of Equalization and Review, that did

---

6. Bayer also cited to two decisions of this Court to support its argument that the Prosecutor did not have authority to challenge the Commission's ruling. Neither case, however, is relevant to the issue presented in this appeal. *See State ex rel. McGraw v. Burton*, 212 W.Va. 23, 569 S.E.2d 99 (2002) (addressing the issue of State agencies and officials using lawyers who were not employed or approved by the Attorney General); *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689 (1982) (addressing a certified question on the constitutionality of a statute that would allow county assessors to value property in a manner that was not equal and uniform).

7. Additionally, the statute does not have a provision that authorizes an appeal of a decision rendered by the Commission. This Court has previ-

ously held that "[n]o express remedy having been provided for review of [a Commission's] action [under W. Va.Code § 11–3–27], the circuit court has jurisdiction to review the same by the writ of certiorari." Syl. pt. 4, *Humphreys v. County Court of Monroe County*, 90 W.Va. 315, 110 S.E. 701 (1922). *See also City of Huntington v. State Water Comm'n*, 135 W.Va. 568, 576–577, 64 S.E.2d 225, 230 (1951) ("Wherever by a dearth in a statute there is given no statutory right of review, the writ of certiorari is available in order to obtain judicial review of the findings of an administrative board."). Consequently, a challenge to a Commission's decision under W. Va. Code § 11–3–27 may be done through a petition for a writ of certiorari.

not involve a clerical error or a mistake occasioned by an unintentional or inadvertent act.[8] This statute provides that "[t]he right of appeal from any assessment by the county [commission], as hereinbefore provided, may be taken either by the applicant… or *the State, by its prosecuting attorney or tax commissioner* [.]" W. Va.Code § 11-3-25 (emphasis added). This provision is unambiguous. It permits the Tax Commissioner or a prosecuting attorney to appeal a decision of a county commission, concerning an erroneous tax assessment that did not involve a clerical error or a mistake occasioned by an unintentional or inadvertent act.

■ In view of W. Va.Code § 11-3-25, we do not believe that the Legislature intended to preclude the Tax Commissioner and county prosecutors from challenging a ruling by a county commission under W. Va.Code § 11-3-27. Consequently, we now hold that, in a proceeding brought before a county commission by a tax payer under W. Va.Code § 11-3-27 (2000) (Repl.Vol.2008), either the Tax Commissioner or the county prosecutor may challenge the county commission's decision in circuit court through a petition for a writ of certiorari.

■ Bayer also contends that, because the Tax Commissioner chose to not challenge the decision of the Commissioner, the Prosecutor should be precluded from making such a challenge. A case which helps guide our resolution of this argument is *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005).

In *Brandon B.* two juveniles, in separate juvenile delinquency proceedings, entered into plea agreements with prosecutors that called for their placement in out-of-state juvenile facilities. The West Virginia Department of Health and Human Resources (hereinafter referred to as "DHHR") was not notified of the proceedings in both cases until after the dispositions therein. DHHR filed appeals in both cases which were consolidated by this Court. In the appeal, DHHR argued that the trial courts in both cases failed to convene a multidisciplinary treatment planning process prior to the disposition hearings. The juveniles and prosecutors in both cases argued on appeal that DHHR did not have standing to appeal from the agreed upon disposition of the cases. We disagreed as follows:

> The applicable statutes are clear that the WVDHHR is charged with an affirmative duty to participate in developing permanency plans, and also is financially obligated to expend its funds to provide services. In the present cases, the juveniles were placed in the WVDHHR's custody, and the WVDHHR was financially responsible for those placements. Moreover, the WVDHHR has an obligation under the applicable statutes to participate in the multidisciplinary treatment planning process. Therefore, we conclude that the WVDHHR does have standing to pursue this action.

*Brandon B.*, 218 W.Va. at 329, 624 S.E.2d at 766. *See also Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 437 (1997) (holding that in a driving license revocation proceeding the right of appeal extends to the arresting officer, licensee and the Commissioner of the Division of Motor Vehicles).

In the instant case, the record reveals that Bayer did not notify the Prosecutor of its application with the Commission for relief under W. Va.Code § 11-3-27 until *after* the matter was heard and decided by the Commission on November 6, 2003.[9] The failure

---

8. The basis for relief under W. Va.Code § 11-3-27 involves a clerical error or a mistake occasioned by an unintentional or inadvertent act. However, the basis for relief under W. Va.Code § 11-3-25 is as follows:

> Any person claiming to be aggrieved by any assessment in any land or personal property book of any county who shall have appeared and contested the valuation or whose assessment has been raised by the county court above the assessment fixed by the assessor, or who contested the classification or taxability of

his property may, at any time up to thirty days after the adjournment of the county court, apply for relief to the circuit court of the county in which such books are made out.

9. Bayer did not notify the Prosecutor until November 19, 2003. The notification informed the Prosecutor of a hearing that was to occur the next day on November 20. Of course, as indicated earlier, the November 20 hearing was called simply for the purpose of having the Commission review the order setting out its previously determined decision.

to notify the Prosecutor *before* the application was heard was a direct violation of W. Va.Code § 11–3–27. This statute expressly commands that *"[b]efore* the application is heard, the taxpayer *shall* give notice to the prosecuting attorney of the county[.]" W. Va.Code § 11–3–27(a) (emphasis added). Insofar as the Prosecutor was not at the hearing because Bayer violated W. Va.Code § 11–3–27(a), the Prosecutor was prevented from exercising his right to be present to consult with the Tax Commissioner on how the case should be defended. We have previously noted that "the prosecuting attorney owes a duty to represent the interests of the state, county, and district in matters involving property tax assessments." *In re Elk Sewell Coal*, 189 W.Va. 3, 7 n. 2, 427 S.E.2d 238, 242 n. 2 (1993). Bayer cannot now seek to strip the Prosecutor of a right and duty he otherwise would have had if the Prosecutor had been properly notified of the hearing. We have consistently held that "[a] party should not be deprived of his opportunity to be heard on the merits when he failed to appear for lack of notice." *Cordell v. Jarrett*, 171 W.Va. 596, 598, 301 S.E.2d 227, 230 (1982). *See also Cremeans v. Goad*, 158 W.Va. 192, 195–196, 210 S.E.2d 169, 171 (1974) ("The original movants in this case were given almost no notice of a hearing, and had no time to prepare for it. This is a denial of procedural due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article III, Section 10 of the Constitution of West Virginia."); Syl. pt. 3, in part, *State ex rel. Battle v. Demkovich*, 148 W.Va. 618, 136 S.E.2d 895 (1964) ("A party who is not served with notice of a hearing ... and does not appear at the hearing, is denied a substantial right and is entitled to a reversal of the judgment entered pursuant to the hearing[.]"). We therefore conclude that the circuit court did not commit error in finding the Prosecutor had authority to file the petition for a writ of certiorari.

## B. The Circuit Court Was Correct in Applying a De Novo Standard of Review

The next issue raised by Bayer is that the circuit court committed error in using a de novo standard of review. The circuit court found that, based upon the applicable statute and our cases interpreting that statute, de novo review was appropriate. We agree.[10]

We begin by looking at the statute which broadly outlines the review standard for a certiorari petition before the circuit court. It is provided in W. Va.Code § 53–3–3 (1923) (Repl.Vol.2000), in relevant part, that "[u]pon the hearing, [the] circuit court shall ... review such judgment, order or proceeding, of the county [commission] ... upon the merits, determine all questions arising on the law and evidence, and render such judgment or make such order upon the whole matter as law and justice may require."[11] This Court

---

**10.** " 'De novo refers to a plenary form of review that affords no deference to the previous decisionmaker.' " *West Virginia Div. of Envtl. Prot. v. Kingwood Coal Co.*, 200 W.Va. 734, 745, 490 S.E.2d 823, 834 (1997) (quoting *Fall River County v. S.D. Dept. of Rev.*, 552 N.W.2d 620, 624 (S.D.1996)).

**11.** This Court has previously explained the development of the writ of certiorari in this State as follows:

Originally the writ of certiorari existed as a limited remedy and served primarily as a means of reviewing the actions of inferior tribunals to determine if they had exceeded their jurisdiction. In 1882, however, the Legislature substantially broadened the application of the writ, and the extent of review it affords, with the enactment of the language we now find in W. Va.Code § 53–3–3.... Although this statutory language caused some confusion in the early years after its enactment, it was generally recognized that the statute substantially expanded the scope of review of the circuit court, giving it the power to rehear the issues on the evidence certified from the inferior tribunal. *Harrison v. Ginsberg*, 169 W.Va. 162, 172–173, 286 S.E.2d 276, 282 (1982) (internal citations omitted). *See also Long v. Ohio River R. Co.*, 35 W.Va. 333, 334–335, 13 S.E. 1010, 1011 (1891) ("The principal use of this writ with us before 1868 was to bring up records, in whole or in part, in aid of some other proceeding; but the statute of 1882 ... has very much enlarged its scope, giving power to rehear after judgment on the evidence certified, as well as correct errors in law, and in a proper case to retain for trial de novo[.]"). As indicated in *Harrison*, some of our early cases misconstrued the expansive reach of the statute. *See, e.g.*, Syl. pt. 2, *Alderson v. Commissioners*, 32 W.Va. 454, 9 S.E. 863 (1889) ("The circuit court, where such further proceedings outside the record before it are necessary, cannot retain and try the cause, but must remand to the inferior tribunal for such proceedings.").

has recognized that "[o]n certiorari the circuit court is required to make an independent review of both law and fact in order to render judgment as law and justice may require." Syl. pt. 3, *Harrison v. Ginsberg*, 169 W.Va. 162, 286 S.E.2d 276 (1982). *See also Davis v. Hix*, 141 W.Va. 385, 391, 90 S.E.2d 357, 361 (1955) ("In this jurisdiction circuit courts, upon certiorari, review matters of law and fact and make such disposition of a case as 'law and justice may require.'"); Syl. pt. 1, *Copley v. Trent*, 117 W.Va. 768, 188 S.E. 138 (1936) ("Circuit courts, upon certiorari, are authorized, under Code, 53–3–3, to review matters of law and fact and to dispose of the cases as 'law and justice may require.'"). We have also indicated that "[u]pon the hearing of [a] writ of certiorari, the circuit court is authorized to take evidence, independent of that contained in the record of the lower tribunal[.]" Syl. pt. 4, in part, *North v. West Virginia Bd. of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977). *See also Adkins v. Gatson*, 218 W.Va. 332, 336, 624 S.E.2d 769, 773 (2005). We have also observed, in passing, that "under the expanded role accorded certiorari by West Virginia Code § 53–3–3, the circuit court, in effect, takes the matter de novo." *Board of Educ., Lincoln County v. MacQueen*, 174 W.Va. 338, 340, 325 S.E.2d 355, 357 (1984).[12] *See also Snodgrass v. Board of Educ. of Elizabeth Indep. Dist.*, 114 W.Va. 305, 306, 171 S.E. 742, 743 (1933) ("It is therefore seen that the circuit judge upon hearing … a writ of certiorari as provided for in this statute, is reviewing both law and fact, and is vested with the power to enter a proper judgment in consideration of both. This makes the circuit court, to all intents and purposes, a fact finding tribunal upon the record as it was before the inferior court.").[13]

It is clear from our prior cases, and we so hold that, unless otherwise provided by law, the standard of review by a circuit court in a writ of certiorari proceeding under W. Va.Code § 53–3–3 (1923) (Repl.Vol.2000) is de novo.[14] This standard is based upon the fact that a circuit court is permitted to consider evidence that was not submitted to a lower tribunal. In the instant proceeding

**12.** Bayer contends that the circuit court's review should have been limited to "arbitrary and capricious." We disagree for the reasons stated in *Harrison:*

> There is language in some relatively recent opinions of this Court indicating that if an inferior tribunal's decision is arbitrary and capricious it should not be affirmed by the circuit court on certiorari. While we agree that an arbitrary and capricious decision of an inferior tribunal should not be affirmed by the circuit court on certiorari, in light of the language of W. Va. § 53–3–3 these cases cannot be read as limiting the circuit court on certiorari to an arbitrary and capricious standard of review. Such a result would be inconsistent with our [recognition] that in proper circumstances, the circuit court on certiorari is authorized to take evidence independent of that contained in the record of the lower tribunal.
>
> Moreover, we recently held in … a case involving review by the circuit court on certiorari of a county board of education administrative ruling, that [w]hen the circuit court sits in review of the decisions of … administrative tribunals it shall record findings of fact and conclusions of law along with the judicial orders which it issues. It is obvious that the circuit court could not comply with this requirement without making its own independent review of the law and facts pertinent to the case.
>
> …. Since the circuit court in this case limited its review to an arbitrary and capricious

standard, its decision affirming the appellant's denial of AFDC benefits is erroneous.
*Harrison*, 169 W.Va. at 175–176, 286 S.E.2d at 283–284 (internal citations and quotations omitted). For the reasons set out in *Harrison*, we also reject other standards of review suggested by Bayer.

**13.** Bayer asserts that under the authority of our decision in *Humphreys v. County Court of Monroe County*, 90 W.Va. 315, 110 S.E. 701 (1922), the circuit court could not apply de novo review. We disagree. The decision in *Humphreys* expressly declined to decide whether de novo review was permitted by the circuit court. *See Humphreys*, 90 W.Va. at 321, 110 S.E. at 703 ("Nor is there any occasion to say whether the circuit court had jurisdiction to try the case de novo, and admit evidence in addition to that upon which the county court acted.").

**14.** Our holding is qualified because there are statutes which authorize review by a petition for a writ of certiorari, but expressly prohibit de novo review. *See, e.g.,* W. Va.Code § 8A–9–6(b)(2004) (Repl.Vol.2007) ("If it appears to the court or judge that testimony is necessary for the proper disposition of the matter, the court or judge may take evidence to supplement the evidence and facts disclosed by the petition and return to the writ of certiorari, but no such review shall be by trial de novo.").

the record reveals that Bayer attached to its pre-and post-reversal memoranda of law exhibits and affidavits that were not submitted into the record before the Commission.[15] The circuit court was permitted to consider this evidence only because W. Va.Code § 53-3-3 has been construed as authorizing the submission and consideration of such evidence.[16] In sum, we reject Bayer's contention that de novo review was not permitted.[17]

### C. Burden of Proof under W. Va.Code § 11-3-27

The next issue we must address is the burden of proof imposed upon a party seeking relief under W. Va.Code § 11-3-27.[18] During the proceeding before the Commission there was discussion as to whether the burden of proof was by a preponderance of the evidence or the higher standard of clear and convincing evidence. Two Commissioners believed the burden was that of preponderance of the evidence; while the remaining Commissioner believed that the clear and convincing evidence standard applied. The circuit court adopted the position of the majority of the Commission and found that a preponderance of the evidence standard was applicable.

■ We have recently held that a party challenging a tax assessment under W. Va. Code § 11-3-24 (1979) (Repl.Vol.2008) must show by clear and convincing evidence that he/she is entitled to relief. *See* Syl. pts. 5 & 6, *In Re: Tax Assessment of Foster Foundation's Woodlands Retirement Community,* 223 W.Va. 14, 672 S.E.2d 150 (2008). We can discern no justification for applying separate burdens of proof for assessment issues raised under W. Va.Code § 11-3-24 and assessment issues brought under W. Va.Code § 11-3-27. Consequently we hold that a taxpayer seeking relief from an erroneous tax assessment under W. Va.Code § 11-3-27 (2000) (Repl. Vol.2008), must establish entitlement to relief by clear and convincing evidence.

■ In view of our holding, it is evident that the circuit court and Commission applied the wrong burden of proof. "However, this error is harmless because it ran in [Bayer's] favor: [the Commission and trial court] applied a lower standard of proof than the law required." *Whiting v. State,* 191 P.3d 1016, 1021 (Alaska Ct.App.2008). *See also Parham v. Horace Mann Ins. Co.,* 200 W.Va. 609, 617, 490 S.E.2d 696, 704 (1997) ("[W]e conclude the procedural error committed by the trial court did not result in substantial injustice or prejudice the substantive rights of Appellants. Therefore, we consider such error harmless, and decline to reverse the final decision of the trial court."); W. Va. R. Civ. P., Rule 61 ("The court at every stage of the proceeding must disregard any error or

---

**15.** Bayer attached two exhibits to its pre-reversal memorandum of law, and two affidavits to its post-reversal memorandum of law.

**16.** Even if the circuit did not rely on the exhibits and affidavits in rendering its decision, this would not alter the fact that such evidence was presented and could have been considered.

**17.** Bayer contends that permitting the circuit court to review de novo the proceeding it brought to the Commission violates the Separation of Powers Clause found in W. Va. Const., Art. V, § 1. Bayer has cited to several cases to support its contention. However, the cases cited by Bayer were fact specific and therefore distinguishable from the nature of the issues presented in this case. For example, Bayer cited to the decision in *Danielley v. City of Princeton,* 113 W.Va. 252, 167 S.E. 620 (1933). In *Danielley* this Court addressed a statute which permitted circuit courts to review de novo decisions by the State Water Commission. We held that the statute was unconstitutional because it would authorize a circuit court to create a water pollution

system if it did not approve of the system created by the State Water Commission. We rejected such authority being given to circuit courts because "[a] review of the system (for the regulation of the pollution) adopted by the commission and the approval of that or some other system by the court would require the court itself to exercise discretion; I.e., executive power." *Danielley,* 113 W.Va. at 255, 167 S.E. at 622. *See also In re Tax Assessment Against Am. Bituminous Power Partners,* 208 W.Va. 250, 539 S.E.2d 757 (2000) (recognizing that W. Va.Code § 11-3-25 only permits a circuit court to review a county commission's tax ruling based upon the record created at the county commission hearing); *Frymier–Halloran v. Paige,* 193 W.Va. 687, 458 S.E.2d 780 (1995) (holding that circuit courts may not conduct de novo review of an appeal from a decision by the Tax Commissioner).

**18.** This issue was presented as a cross assignment of error by the Prosecutor.

defect in the proceeding which does not affect the substantial rights of the parties."). Further, as we discuss below, the evidence submitted by Bayer did not establish by a preponderance of the evidence, or the applicable higher standard of clear and convincing evidence, that it was entitled to the relief requested. *See Idaho Forest Indus., Inc. v. Hayden Lake Watershed Improvement Dist.*, 135 Idaho 316, 17 P.3d 260, 264 (2000) ("While the district judge held the State to a different standard than we have articulated, that error is harmless for the purposes of this case. The State received the benefit of a lower standard, but as will be discussed hereafter, was not able to sustain even that lower burden."); *Hughes v. Delphi Interior & Lighting Sys.*, 752 So.2d 950, 954 (La.Ct.App. 1999) ("Thus, even though there was error in the hearing officer's recitation of the appropriate standard, it was harmless error."); *Crowe v. Wagner*, No. 20151, 2004 WL 2429807, at *4 (Ohio Ct.App. Oct.8, 2004) ("[S]ince it is clear from the record and the decision of the court that the plaintiff did not prove any part of his case by a preponderance of the evidence, the use of the words 'clear and convincing' was a harmless error.").

### D. The Merits of the Issues Presented

Bayer contends that the circuit court committed error in reversing the Commission's ruling. The Commission found that Bayer was entitled to relief because Bayer's tax reporting "errors resulted from [a] clerical error or a mistake occasioned by an unintentional or inadvertent act[.]" The circuit court reversed this decision on the grounds

"that the accounting discrepancies were the result of negligence[.]" The basis for granting or denying relief from an erroneous tax assessment is set out in W. Va.Code § 11-3-27(a), in relevant part, as follows:

> Any taxpayer ... claiming to be aggrieved by any entry in the property books of the county, including entries with respect to classification and taxability of property, resulting from *a clerical error or a mistake occasioned by an unintentional or inadvertent act as distinguished from a mistake growing out of negligence or the exercise of poor judgment*, may, within one year from the time the property books are delivered to the sheriff or within one year from the time such clerical error or mistake is discovered or reasonably could have been discovered, apply for relief to the county commission of the county in which such books are made out.

(Emphasis added). Under this statute a taxpayer may obtain relief when it is established that an entry in the property books of the county is wrong, due to a clerical error [19] or a mistake occasioned by an unintentional or inadvertent act. Conversely, relief must be denied where it is shown that an incorrect entry on the county books was due to a mistake growing out of negligence or the exercise of poor judgment.[20] The problem we encounter with the standard for obtaining relief under W. Va.Code § 11-3-27(a) is that the statute does not provide any guidance as to the distinction that should be made between an "unintentional or inadvertent act" and a "negligent act or exercise of poor judgment."[21] Absent evidence to the con-

---

**19.** We summarily find that the evidence was insufficient to establish that Bayer's tax reporting errors were clerical errors. We have held that a clerical error is " 'a mistake in copying or writing; a mistake which naturally excludes any idea that its insertion was made in the exercise of any judgment or discretion, or in pursuance of any determination; an error made by a clerk in transcribing, or otherwise, which must be apparent on the face of the record, and capable of being corrected by reference to the record only.' " *Johnson v. Nedeff*, 192 W.Va. 260, 265, 452 S.E.2d 63, 68 (1994) (quoting *Stephenson v. Ashburn*, 137 W.Va. 141, 146, 70 S.E.2d 585, 588 (1952)). The evidence in this proceeding indicates that Bayer's tax reporting errors did not appear on the face of the records. The errors

were determined, according to the testimony of one of Bayer's witnesses, after more than 50 hours of inquiry into materials outside the records.

**20.** The statute also contains a statute of limitations. The Commission found that Bayer satisfied the statute limitations requirement. The circuit court did not address the issue because it ruled that Bayer was negligent in reporting incorrect tax information.

**21.** We will note that during the proceedings before the Commission there was concern expressed by the Commissioners as to what distinction should be made between an unintentional or

trary, "we are to assume the legislature intended [the phrases] to have a different meaning." *Wisconsin Cent. Ltd. v. Wisconsin Dep't of Revenue*, 232 Wis.2d 323, 606 N.W.2d 226, 232 (1999). Consequently, we must endeavor to make a distinction between the phrases "unintentional or inadvertent act" and a "mistake of growing out of negligence or the exercise of poor judgment." W. Va.Code § 11–3–27(a).

We have previously observed that "[o]n occasion ..., such as the case *sub judice,* the language used by the Legislature may be plain but it may have neglected to define a certain word or words used therein." *Bluestone Paving, Inc., v. Tax Comm'r of State*, 214 W.Va. 684, 689, 591 S.E.2d 242, 247 (2003). In that regard, "[i]n the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982). "However, when assigning a meaning to an undefined term, we will not embrace a definition that would produce absurd, inconsistent, or incongruous results." *Bluestone Paving*, 214 W.Va. at 689, 591 S.E.2d at 247. It is " 'the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' " Syl. pt. 2, in part, *Conseco Fin. Servicing Corp. v. Myers*, 211 W.Va. 631, 567 S.E.2d 641 (2002) (quoting Syl. pt. 2, in part, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925)).

Caselaw suggests that the terms unintentional, inadvertent, negligent and poor judgment are synonymous, when not given specific definitions. It has been said that "poor judgment ... is the essential nature of negligent conduct." *General Accident Ins. Co. of Am. v. Allen*, 708 A.2d 828, 830 (Pa.Su-

per.Ct.1998). *See also Dep't of Highways v. DeTienne*, 218 Mont. 249, 707 P.2d 534, 536 (1985) ("[T]he jury understood negligence ... as it is commonly understood by the layman to mean careless or showing poor judgment."); *Lang v. Cage*, 554 So.2d 1312, 1316 (La.Ct.App.1989) ("[T]he accident and the consequent injuries resulted solely from the negligent conduct of Freddie Cage, namely, his exercise of poor judgment due to his intoxicated state[.]"). It has been correctly observed that "[i]nadvertent means heedless, negligent, inattentive or unintentional." *State v. Szemple*, 263 N.J.Super. 98, 622 A.2d 248, 261 (1993). *See also Phillips Petroleum Co. v. Curtis*, 85 F.Supp. 399, 401 (E.D.Okla.1949) ("It does not follow that an unintentional or inadvertent act is not a negligent act. Inadvertent is defined by Webster as heedless, inattentive, negligent.").

Insofar as the popularly accepted meaning of unintentional, inadvertent, negligent and poor judgment is the same, and W. Va.Code § 11–3–27(a) fails to provide any specific differentiation between the terms, a literal application of the terms results in circuitous absurdity. It has been said that "[t]he literal interpretation of the words of an act should not prevail if it creates a result contrary to the apparent intention of the legislature and if the words are sufficiently flexible to allow a construction which will effectuate the legislative intention." 2A Norman J. Singer and J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:7, at 260 (7th ed.2007). *See also Chickasaw Nation v. United States*, 534 U.S. 84, 85, 122 S.Ct. 528, 535, 151 L.Ed.2d 474 (2001) ("The canon requiring a court to give effect to each word if possible is sometimes offset by the canon that permits a court to reject words as surplusage if inadvertently inserted or if repugnant to the rest of the statute[.]") (internal quotations and citation omitted). In order to operationalize the standard for relief under W. Va.Code § 11–3–27(a), we believe that the distinction to be drawn between an unintentional or inadvertent act [22] and a neg-

inadvertent act and a negligent act or poor judgment.

**22.** For the purpose of W. Va.Code § 11–3–27(a) we will treat the words unintentional and inad-

vertent as interchangeable terms. *See National Mining Ass'n v. Kempthorne*, 512 F.3d 702, 706 (D.C.Cir.2008) ("[C]ourts will not give independent meaning to a word where it is apparent

ligent act or exercise of poor judgment,[23] is contained in the definition of negligence that is found in our tort cases. This Court has held that " '[n]egligence is conduct unaccompanied by that degree of consideration attributable to the man of ordinary prudence under like circumstances.' " Syl. pt. 1, *Honaker v. Mahon*, 210 W.Va. 53, 552 S.E.2d 788 (2001) (quoting Syl. pt. 4, *Patton v. City of Grafton*, 116 W.Va. 311, 180 S.E. 267 (1935)). We have also stated that " '[n]egligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstance of time, place, manner, or person.' " Syl. pt. 2, *Honaker* (quoting Syl. pt. 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W.Va. 511, 23 S.E. 582 (1895)). For purposes of W. Va.Code § 11–3–27(a), we believe that the "duty of care" element of negligence found in our tort cases should be used to distinguish an unintentional or inadvertent act from that of a negligent act or exercise of poor judgment. "Generally speaking, the negligence standard as in the tort context is objective, requiring a finding of a lack of due care or a failure to do what a reasonable and prudent person would do under analogous circumstances." *Neonatology Assocs., P.A. v. C.I.R.*, 299 F.3d 221, 233 (3rd Cir.2002). *See also Klein v. United States*, 94 F.Supp.2d 838, 843 (E.D.Mich.2000) ("Tax negligence is a lack of due care or a failure to do what a reasonable person would due under the circumstances." (internal quotations and citations omitted)). A breach of this duty "can include any failure ... to exercise ordinary and reasonable care in the preparation of a tax return, to keep adequate books and records, or to substantiate items properly." *Neonatology Assocs.*, 299 F.3d at 233.

■■■■ In view of the foregoing, we hold that, under W. Va.Code § 11–3–27(a)(2000)

(Repl.Vol.2008), a mistake occasioned by an unintentional or inadvertent act is established by evidence showing that, although the duty of care was not breached, an error occurred in the entry in the property books of the county, including entries with respect to classification and taxability of property. Relief under the statute may not be granted if it is shown that a taxpayer breached its duty of care.

We will now examine the facts of this case to determine whether the evidence established that Bayer did not breach its duty of care in erroneously reporting data for personal property taxes.

■■■■ Bayer sought relief from the assessment of its 2001, 2002, and 2003 personal property listings due to specific errors it made: (1) for the years 2002 and 2003 Bayer reported the value of inventory as of July 31 of each year, when it should have been reported as of June 30 of each year; (2) for all three years certain materials were reported as being finished goods, but should have been reported as raw materials; (3) for all three years the value of certain materials were included in inventory, when the materials were in fact in transit; and (4) for the year 2003 certain materials were not included as raw materials but should have been.[24]

The circuit court found that each of the errors in question resulted from negligence and not due to a mistake that was attributable to an unintentional or inadvertent act. We agree.

Bayer attributed the errors for the taxing periods in question "to difficulties that arose when reconciling the accounting system of Bayer with that of Lyondell Chemical Company, which Bayer had purchased in 2000." Although the three witnesses called by Bayer testified that Bayer used reasonable care

---

from the context of the act that the word is surplusage[.]" (internal quotations and citation omitted)).

**23.** For the purpose of W. Va.Code § 11–3–27(a) we will treat the words negligent act and poor judgment as interchangeable terms. *See Greenberg v. Cardiology Surgical Ass'n*, 855 So.2d 234, 237 (Fla.Dist.Ct.App.2003) ("[A]lthough generally, in construing a statute, the courts should not take liberty to ignore or delete any of the words

employed therein, a court may do so if the words at issue are so meaningless or clearly inconsistent with the legislative intent that they should be ignored as mere surplusage.")

**24.** The record indicates that an outside firm completed Bayer's 2001 tax returns, based upon information supplied by Bayer. The 2002 and 2003 tax returns were done in-house by Bayer.

when reporting the tax data for the periods in question, the statements were conclusory allegations that were not supported by any details regarding the measures used to prevent or discover errors before reporting the tax data in question. *See Brown v. Meyer,* 580 S.W.2d 533, 535 (Mo.Ct.App.1979) ("The rule is that a submissible case is dependent upon proof of facts. Mere conclusions do not satisfy that standard."); *Dallas Ry. & Terminal Co. v. Gossett,* 156 Tex. 252, 294 S.W.2d 377, 380 (1956) ("It is well settled that the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force[.]").

Most of the testimony provided by Bayer's three witnesses addressed the issue of the timeliness of the discovery of the errors after the tax data was filed. Two of the witnesses, Glen W. Craney, Jr.[25] and Gary Dzura,[26] provided extremely limited testimony as to the cause of the errors. Mr. Craney and Mr. Dzura attributed the errors to confusion that was caused in Bayer's integration of Lyondell's accounting system with its accounting system. This fact was illustrated by a question asked of Mr. Craney by Commissioner Carper:

> COMMISSIONER CARPER: Is it a fair statement to make that the transition from the predecessor company to Bayer was considerable confusion?
>
> THE WITNESS: That is a very fair statement.[27]

(Footnote added). Insofar as Bayer attributed the tax reporting errors to the merger of its accounting system with that of Lyondell, Bayer had the burden of providing evidence to show that it took the appropriate level of care in making the merger of the accounting systems so as to prevent the tax data reporting errors in question. *See Phillips Petroleum Co. v. Curtis,* 85 F.Supp. 399, 401 (D.C.Okl.1949) ("The more voluminous

the records, the more intricate the system, the greater is the required degree of care."). No such evidence was presented. As illustrated below, the evidence established that Bayer was negligent in gathering and reporting data that was placed on the tax returns in question.

During the cross examination of Mr. Dzura by counsel for the Tax Commissioner, Mr. Dzura was asked about Bayer's efforts to review information it was reporting for tax purposes:

> Q. Does that mean that none of the information on the returns were troublesome to you? You had confidence in what you were looking at as far as the books and records from Lyondell?
>
> A. We believed we had confidence in the information concerning the inventory numbers.
>
> Q. Okay. And you did a due diligence review of course, did you not? You talked about how important that was at the time you—
>
> A. I don't think I discussed how important it is, but frankly, in the course of Bayer's acquisitions, there is typically not a property tax due diligence effort.

This testimony provides evidence that Bayer institutionalized a practice of not having a reasonable review process for property tax data when it makes an acquisition.

In addressing the issue of errors involved specifically with the inventory reports, Mr. Dzura responded to questions by Commissioner Hardy as follows:

> COMMISSIONER HARDY: Were you able to determine how the error, say with the inventory report, were you able to determine how that was made?
>
> THE WITNESS: Yes, sir.

> A. In the initial year of 2000, we had despaired [sic] accounting systems. We had valuation appraisals that would affect the value of the assets, and at that time as well, there was a general lack of knowledge because of the short timeframe within which the acquisition occurred and the West Virginia property tax return had to be prepared for Kanawha County, a general unfamiliarity of the operations.

---

**25.** Mr. Craney was the site manager for Bayer, and former plant manager for Lyondell.

**26.** Mr. Dzura was the director of taxes for Bayer.

**27.** Mr. Dzura also testified on direct examination about the confusion Bayer encountered:

> Q. Describe what complications arose from that acquisition?

COMMISSIONER HARDY: How did you do that?

THE WITNESS: There was a difference between the accounting records from which the tax returns were prepared versus the accounting records at the plant sites. I would say generally, Mr. Commissioner, that we used corporate level reports and believed them to be correct. However, because of systemic problems that did not reflect the underlying reality in the case of intransit inventories where the barges were located, we believed those reports to be accurate....

COMMISSIONER HARDY: What steps have you taken to insure that this doesn't happen in the future?

THE WITNESS: We now verify those corporate level reports directly with the plant sites.

This testimony highlights the fact that, at least for inventory data, Bayer could have prevented the inventory errors by taking the reasonable step of having a verification process in place.

During further questioning of Mr. Dzura by Commissioner Hardy, the following was said about who actually caused the errors:

COMMISSIONER HARDY: When this error was discovered, were you able to go back in your files and determine who made the error in your group?

THE WITNESS: Yes, sir.

COMMISSIONER HARDY: And did you discuss that with, was it one employee or two?

THE WITNESS: Two employees.

COMMISSIONER HARDY: Did you bring them in and discuss the error with them?

THE WITNESS: They were no longer within our tax group at the time the errors were discovered.

COMMISSIONER HARDY: Were they still employed by Bayer Corporation?

THE WITNESS: Yes.

COMMISSIONER HARDY: Did you talk to them or their supervisor or try and make investigation as to why—

THE WITNESS: They had moved on to different groups within Bayer, so frankly, I didn't think it was appropriate to follow up with them. It was not relevant to their current positions any longer.

The above testimony reveals that Bayer failed to question the employees who allegedly made the tax reporting errors. This omission perhaps explains why Bayer was unable to introduce any evidence to show that it did not breach its duty of care in reporting the tax information.

Insofar as Bayer failed to provide any witness testimony on the critical issue of what measures it took to prevent the taxing errors in question, Bayer failed to prove by clear and convincing evidence (as well as the lower standard of preponderance of the evidence) that the errors were caused by a mistake that was attributable to an unintentional or inadvertent act. On the contrary, the record supports finding that the errors were caused by Bayer's breach of its duty of care in collecting and reporting its tax data. *See Leroy Jewelry Co., Inc. v. C.I.R.*, 36 T.C. 443, 446, 1961 WL 1146 (Tax Court 1961) ("This underpayment was not due to a mistake in interpreting the law or in applying the factsit was due to errors in properly recording transactions on its books which errors petitioner neither took precautions to prevent nor attempted to check. In our opinion, this constitutes negligence[.]").

## IV.

### CONCLUSION

In view of the foregoing, the circuit court's order is affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

Senior Status Justice MCHUGH disqualified.

Judge BEANE, sitting by temporary assignment.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

BENJAMIN, J., concurring and dissenting:

(Filed Jan. 9, 2009)

For the reasons set forth in my dissenting opinion in *In re: Tax Assessment of Foster Foundation's Woodlands Retirement,* No. 33891, I respectfully concur and dissent in this case. I believe that the proper burden of proof for a taxpayer in a case such as this is that the taxpayer meet a "preponderancy of the evidence" burden. I therefore dissent to the majority opinion. However, since the use of a preponderancy standard would not have changed the result on appeal, I concur with the majority in the ultimate outcome of this appeal.